Guiseppo Spitalera, an Infant, by Salvatora Spitalera, his Guardian ad litem, Respondent, *v.* Second Avenue Railroad Company, Appellant.

*Negligence — personal injury from collision with a street horse car — issue as to whether the plaintiff had boarded a car — charge ignoring the defendant's evidence.*

On the trial of an action brought to recover damages from a street railroad company for a personal injury, suffered by a boy through being run over by one of the defendant's horse cars, and alleged to have been caused by the negligence of the defendant's employees, the issue of fact tendered by the plaintiff was that he had boarded another car going in the opposite direction, tendered his fare, and was wrongfully put off by the conductor, and was so exposed to the car which injured him.

The defendant denied this, and asserted that the boy did not enter upon either car, but ran in front of the horses of the car by which he was injured, and was knocked down by them. This was the theory of the defendant's case, and evidence was given in support of it.

The trial court, however, charged the jury that there was no evidence that would show that the boy was not on one car or the other.

*Held*, that this was clearly a misdirection, well calculated to prejudice the defendant's case; and, hence, that it constituted error for which a new trial should be granted.

Appeal by the defendant, the Second Avenue Railroad Company, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 11th day of April, 1893, upon a verdict in favor of the plaintiff rendered at the New York Circuit, and also from an order entered on the 11th day of May, 1893, denying the defendant's motion for a new trial made upon the minutes.

*Payson Merrill,* for the appellant.

*Abram J. Rose,* for the respondent.

Follett, J.:

This action is for the recovery of damages for a personal injury alleged to have been caused by the negligence of the defendant's employees. The plaintiff is a minor, his age not being disclosed by the record, but from the age of a playmate who testified on the trial, and other circumstances, we infer that he was ten or twelve years of

age at the time of the accident, which occurred July 14, 1891. He lived with his parents on the south side of Twelfth street and east of Second avenue, through which avenue the defendant's horse railroad extends. The plaintiff testified that about noon of July 14, 1891, he received from his mother five cents with which to pay his car fare to Thirty-second street, where he intended to go to help his uncle. He testified that he and his companion walked from near First avenue along Twelfth street until they came to Second avenue, which they crossed and stood on the west sidewalk, and that when an up-town car on defendant's line came along, he got onto it; that the conductor ordered him off, and the plaintiff replied: "I have five cents to pay my fare; stop; I give you five cents," and showed him the money. The conductor answered no, pushed him off and he fell under a down-town car, the forward wheel of which passed over his right foot, so injuring it that amputation of a part of it was necessary. A lad, twelve years of age at the date of the trial (April 3, 1893), who was with the plaintiff, testified to substantially the same state of facts, though he did not seem to be quite certain whether the plaintiff crossed to the west side of Second avenue, or stood between the up and down tracks of the road.

James Healy, a witness called by the plaintiff, testified that he was riding on the down-town car, and sat on the east end of the second seat from the front one. He said that he heard a scream and saw the boy come off from the up-town car, and that he fell under the down-town car.

Chris Lamont, called for the plaintiff, testified that the boy got onto the up-town car, but that he did not see him fall; he saw him after the accident. This is substantially all of the evidence descriptive of the accident, given in behalf of the plaintiff.

Nussbaum, the conductor of the down-town car, testified that he heard a scream, saw the boy fall in the street, and his car ran over him, at which time the horses attached to both cars stood face to face, the up-town car not having reached the point where the boy fell.

Fay, a passenger on the down-town car, testified to about the same state of facts.

Annie Walsch, a witness called by the defendant, testified that she was riding on the down-town car, and that she saw the boys

crossing Second avenue, one of whom was knocked down by the horses of the down-town car and was run over.

Marcuse, the conductor of the up-town car, called by the defendant, testified that the accident occurred before his car reached the place where the boy fell, and that, when the cars were stopped, the horses stood face to face. He also testified that the boy was not on his car, and did not tender him five cents.

Martin, the driver of the up-town car, testified that, before his car reached the place of the accident, the boy had been run over by the down-town car, and that he drove along and stopped his horses near to those drawing the down-town car. This is all of the evidence given by the defendant descriptive of the accident.

The issue of fact tendered by the plaintiff was that he boarded the up-town car, tendered his fare and was wrongfully put off by the conductor. This the defendant denied, and it was asserted in its behalf that the boy did not enter upon either car, but ran in front of the horses of the down-town car and was knocked down by them.

The learned trial judge in submitting the case to the jury, said: "On the part of the defendant, you have this state of facts presented to you, that this boy was a trespasser on the car; that he was not there for the purpose of getting a ride by paying for it, but that he was there simply for the purpose of stealing it, and that when that was notified to him, he got off as best he could, and when he did that, it so happened that he fell under this other car, and was injured by reason of that circumstance. Of course, if he was a trespasser on the car, and if he merely got off by a notification on the part of the conductor, the railroad company would not be responsible, but, even if he were a trespasser, and if he were in a dangerous position, and the conductor of the car threw him off in the way in which this boy testifies, under another car, the railroad company would be responsible, because the conductor would not have any right to eject any person, even a trespasser on the car, from a position of that kind so as to put him in peril of his life or of his limb." To this instruction the defendant excepted. This instruction did not present the real issue litigated on the trial. The defendant's witnesses denied that the plaintiff entered upon either car. Its theory of the accident was that the plaintiff in attempting to cross the street in front of the down-town car, was knocked

down by the horses. The defendant asked the court to charge : "That if they (the jury) find that the boy was not upon either of the cars, but was running across the street, and ran into the horses attached to the down-town car, or into the car, they must find a verdict for the defendant." The court replied : "I refuse so to charge ; there is no evidence before the jury that would show that he was not on one car or the other." This was the final instruction given to the jury, and it was clearly a misdirection. The whole theory of the defendant's case was that the boy was not on either car, but was knocked down by the horses, and they gave evidence in support of that theory. The statement by the trial judge that there was no such evidence was well calculated to prejudice the defendant's case.

For this error the judgment and the order must be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order reversed and new trial granted, with costs to abide the event.